Case 1:21-mj-00239-GMH   Document 1-1   File

Case: 1:21-mj-00239
Assigned to: Judge Harvey, G. Michael
Assign Date: 2/17/2021
Description: COMPLAINT W/ARREST WARRANT

# STATEMENT OF FACTS

Your affiant, Randy C. Combs, is a Special Agent of the Federal Bureau of Investigation. Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detention, investigation, or prosecution of a violation of Federal criminal laws.

Unless otherwise stated, the information in this Affidavit is either personally known to your affiant, has been provided to your affiant by other individuals, or is based on a review of various documents, records, and reports. Because this Affidavit is submitted for the limited purpose of establishing probable cause to support an application for an arrest warrant, it does not contain every fact known by your affiant or the United States.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., numerous individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President

Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

On January 6, 2021, U.S. Capitol Police Officer Sims encountered JOHN STEVEN ANDERSON in a hallway inside the Capitol Building near the West side.  ANDERSON had just been sprayed with OC spray and was being assisted down a hallway by an officer.   Officer Sims brought ANDERSON to EMT personnel.  ANDERSON was subsequently booked, arrested, and given a citation for Unlawful Entry in D.C. Superior Court.

Your affiant reviewed U.S. Capitol Police video footage from that day and identified an individual being assisted down a hallway by an officer at approximately 3:17 p.m.[1]  The individual had his arm draped over the officer's shoulders, requiring the officer's physical assistance.  The individual appeared to be a heavy-set, bald male with facial hair wearing a black fitted shirt with a white line at the collar and glasses hanging from his shirt:



The individual and his shirt matched ANDERSON's appearance in his booking photograph.  The individual depicted in the footage also matched ANDERSON's appearance in his driver's license.

---

[1] U.S. Capitol Police initially provided your affiant with footage of a different male with grey or dark hair, wearing a blue shirt and blue baseball cap, who made entry through the Rotunda door at 3:24 p.m. and wrestled with officers on scene.  Based on a review of that footage showing that that male had hair on his head and was wearing different articles of clothing from those in ANDERSON's booking photograph, your affiant requested that Capitol Police take a closer look and they retrieved the footage of ANDERSON described in this affidavit.

2

On February 4, 2021, your affiant emailed Officer Sims the above screenshot. Officer Sims identified the individual as ANDERSON, the man whom she had seen being assisted down a hallway and who she brought to EMT personnel.

Your affiant reviewed additional U.S. Capitol Police video footage of the exterior of the lower west terrace door of the Capitol Building from January 6, 2021. The footage showed ANDERSON at approximately 2:46 p.m. approaching the archway of the tunnel to the lower west terrace door. ANDERSON, whose black shirt with the white collar line and hanging glasses are visible, is also wearing a black beanie on his head and what appears to be red and camouflage-patterned outerwear. In later footage in this area, reflected in screenshots below, ANDERSON removes the beanie and reveals his bald head.



The footage from approximately 2:46 p.m. to 2:48 p.m. captured ANDERSON moving through a crowd inside the tunnel, positioning himself closer to the lower west terrace door. ANDERSON appears to be filming using a phone on a selfie stick that he is holding.





Your affiant also reviewed U.S. Capitol Police footage reflecting a perspective from inside – rather than outside – the lower west terrace door. Footage from approximately 2:48 p.m. from inside the door showed a large number of law enforcement officers standing shoulder to shoulder trying to keep the crowd of violators from entering the Building. The footage shows the officers closest to the crowd and the door holding several police shields above them as apparent protection. There is jostling between the crowd and the officers and a large cloud of spray is dispensed around 2:49 p.m.



At approximately 2:51 p.m., video footage shows ANDERSON appear to pull a shield away from an unseen person and then pass the shield into the crowd at approximately 2:52 p.m.



5





    Footage from approximately 2:53 p.m. shows ANDERSON touching and then assisting in passing a second police shield into the crowd, as shown in the screenshots below. Some of the members of the crowd are pushing toward the police, brandishing sticks or batons, and throwing objects toward the officers.





Your affiant also reviewed body camera footage from MPD officers stationed by the lower west terrace door. The body camera footage captures officers by the door shouting "Stop!," "Back up!" and "Get out" and trying to push violators out of the door. ANDERSON is visible at approximately 2:58 p.m. standing inside the door holding a police shield.







The voice of an officer is heard ordering ANDERSON, "Back up! But, release the shield. I will spray you if you do not release the shield! Release the shield!" ANDERSON says something unintelligible. The same officer is then heard saying, "Alright, release your hand, release your hand, release your hand… you're gripping the shield, let it go. I will spray you right now if you don't let it go. I said let it go." An officer's raised hand is visible with what appears to be a type of spray and ANDERSON appears to release the shield. Below are screenshots taken from the aforementioned time periods.







At approximately 2:59 p.m., the body camera footage shows ANDERSON, now sitting on the ground outside the door.  The same officer's voice is heard stating, "Sir back up, let go of the door, back up," and ANDERSON is heard saying, "I can't go anywhere."  The officer, who continues to shout "Back up!" at the crowd, suggests he stand up, and then, in response to something ANDERSON says, says, "I understand that, but we have to establish a line and I'll get you an ambulance ok?  I can't get on the radio right now."  The officers continue to try to control the aggressive crowd.  ANDERSON stands up and is heard saying he has "asthma," he "can't breathe" and possibly that he was collapsing. The officer is heard saying they will get him an ambulance and asking someone to call for an ambulance.  U.S. Capitol Police footage from approximately 3:03 p.m. shows an officer bringing ANDERSON inside the doors and assisting him through the group of officers.



11



Based on the foregoing, your affiant submits that there is probable cause to believe that ANDERSON violated 18 U.S.C. §§ 111(a) and § 2, which makes it a crime to forcibly assault, resist, oppose, impede, intimidate, or interfere with an officer or employee of the United States or of any agency in any branch of the United States government while engaged in or on account of the performance of official duties. Persons designated within section 1114 include any person assisting an officer or employee of the United States in the performance of their official duties.

Your affiant submits there is probable cause to believe that ANDERSON violated 18 U.S.C. § 231(a)(3) and § 2, which make it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

Your affiant submits there is probable cause to believe that ANDERSON violated 18 U.S.C. § 641 and § 2, which make it a crime to steal, purloin, or knowingly convert to his use or the use of another, or without authority, convey or dispose of any thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been stolen, purloined or converted. The police shields are "things of value of the United States or of any department or agency thereof."

Your affiant submits there is also probable cause to believe that ANDERSON violated 18 U.S.C. §§ 1752(a)(1) and (2), which make it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in

disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Finally, your affiant submits there is probable cause to believe that ANDERSON violated 40 U.S.C. §§ 5104(e)(2)(D) and (G), which make it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

_____
SPECIAL AGENT RANDY C. COMBS
FEDERAL BUREAU OF INVESTIGATION

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 17th day of February, 2021.

_____
THE HONORABLE G. MICHAEL HARVEY
U.S. MAGISTRATE JUDGE